**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **TIMOTHY W. TATE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | )     **Case no. 2:15cv38 PLC** |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM AND ORDER

Timothy Tate ("Plaintiff") seeks review of the decision by the Social Security Commissioner, Carolyn Colvin ("Defendant"), denying his applications for Social Security Income and Disability Insurance Benefits under the Social Security Act ("Act"). The parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF No. 9). Because substantial evidence supports the decision to deny benefits, the Court affirms the Commissioner's denial of Plaintiff's applications.

### I. *Background and Procedural History*

On June 13, 2012, Plaintiff filed applications for Social Security Income and Disability Insurance Benefits. (Tr. 125-31, 134-40). The Social Security Administration ("SSA") denied Plaintiff's claims, and he filed a timely request for a hearing before an administrative law judge. (Tr. 76-79, 82-83). The SSA granted Plaintiff's request for review and conducted a hearing on December 19, 2013. (Tr. 27-55). In a decision dated

February 14, 2014, the ALJ found that Plaintiff "has not been under a disability within the meaning of the Social Security Act from April 1, 2011, through the date of this decision." (Tr. 11-22). The SSA Appeals Council denied Plaintiff's subsequent request for review of the ALJ's decision. (Tr. 1-3). Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the Commissioner's final decision. Sims v. Apfel, 530 U.S. 103, 106-07 (2000).

## II.     Evidence Before the ALJ

### A.  ALJ Hearing

Plaintiff, then fifty years of age, appeared with counsel at the administrative hearing on December 19, 2013. (Tr. 29, 31). Plaintiff testified that he completed high school in special education classes and continued to struggle with reading and math. (Tr. 31-32). Plaintiff stated that he had been unable to work since April 2011 as a result of lower back pain that extended down into his right leg and foot. (Tr. 32). Plaintiff explained that he could stand for about twenty minutes "but the whole time I'm still in pain," and he could sit for fifteen to twenty minutes before he would have to lie down. (Tr. 33). Plaintiff testified that he would generally lie down three to five times per day for about thirty minutes, and he could only lift "about five pounds." (Id.). Standing, walking, bending, and riding long distances aggravated his back pain. (Tr. 34).

In regard to activities of daily living, Plaintiff stated that his wife often helped him get in and out of the tub and dress himself. (Tr. 34). Plaintiff's wife did most of the housework and regularly brought him his meals "because a lot of times I just don't want to get up [from the couch] because I'm hurting." (Id.). Plaintiff testified that he experienced four to five "bad days"

per month during which he "can't even get out of bed." (Tr. 35). During the day, Plaintiff watched television. (Tr. 38).

Plaintiff testified that he was receiving epidural steroid injections, which temporarily relieved his back pain. (Id.). Plaintiff also experienced pain in his arms, which awakened him at night. (Tr. 36). As a result of this pain, "I have problems even lifting up a coffee cup to drink coffee with my right arm." (Id.). Plaintiff further testified that, if he lifted anything weighing more than five pounds, "I usually drop it." (Tr. 37).

Plaintiff stated that he suffered "some" depression. (Id.). Specifically, he stated that his inability to participate in activities he once enjoy with his wife – such as fishing, driving in the countryside, shopping, and visiting relatives – "bums me out." (Id.). Plaintiff was also unable to play the guitar and engage in woodworking.

The ALJ asked Plaintiff whether he continued to drive his wife to work every day, as Plaintiff had stated in his adult function report of June 2012, and Plaintiff responded that his wife's employer terminated her the previous month. (Tr. 38-41). Plaintiff also stated he had not been feeding and watering the chickens or retrieving the mail. (Tr. 41). In regard to the cause of his back pain, Plaintiff testified that he slipped and fell on ice twice in December 2010 and once in January 2011, aggravating previously existing back problems. (Tr. 42-43). Plaintiff informed the ALJ that his mother drove him to the hearing, and they stopped once during the forty-five minute trip. (Tr. 45). During that stop, Plaintiff "got out and kind of moved around a little bit," but his mother "didn't stop on my account." (Tr. 45-46).

Denise Weaver, a vocational expert, also testified at the hearing. (Tr. 47-55). Ms. Weaver classified Plaintiff's primary occupation in the last fifteen years as delivery truck driver, which was medium strength, and material handler, which was heavy strength. (Tr. 47-48). Ms.

Weaver affirmed that these are both semi-skilled jobs and that the skills from those jobs were not transferable to the sedentary or light exertional levels. (Tr. 48).

The ALJ asked Ms. Weaver to consider a hypothetical individual who was "47 at the amended onset date, 50 years old now" with the same education and work history as Plaintiff and the ability to perform a range of light work, including: occasionally lifting up to 20 pounds; frequently lifting or carrying up to 10 pounds; standing or walking six hours out of an eight hour workday; sitting six hours out of an eight hour workday, with a sit-stand option every 30 to 60 minutes; climbing on ropes, ladders, or scaffolds; and occasionally climbing on ramps and stairs, stooping, kneeling, crouching, or crawling. (Tr. 48-49). Ms. Weaver opined that such person would not be able to perform Plaintiff's past work, but he could work as a folding machine operator, garment sorter, or mail clerk. (Tr. 49-50). Ms. Weaver stated that the hypothetical individual could still perform these jobs if he were further limited to: no more than occasional climbing on ramps, stairs, kneeling, crouching or crawling; no twisting or stooping; and occasional pushing and pulling with the lower extremities. (Tr. 51). However, Ms. Weaver testified that no work was available if that hypothetical individual needed to lie down at least once per day for about thirty minutes at unpredictable times due to pain. (Tr. 53).

*B. Relevant Medical Records*

Dr. Kevin Komes examined Plaintiff on July 31, 2012 at the request of the SSA. (Tr. 253-58). On the evaluation's cover sheet, Dr. Komes checked the space indicating that Plaintiff was unable to "sustain a 40-hour workweek on a continuous basis[.]" (Tr. 253). In his report, Dr. Komes wrote that Plaintiff: "has had no medical work-up in the past"; had a history of several slips and falls at work; and complained of back pain and numbness in the lower and upper extremities. (Tr. 256). Dr. Komes described Plaintiff's affect as "extremely flat" and

observed that Plaintiff "has significant pain behaviors and self-limits range of motion testing and manual muscle testing." (Tr. 257). Dr. Komes found that Plaintiff's strength in his shoulders, elbows, wrists, hips, knees, and ankles was fair, but his "right hip flexion is extremely painful relative to the other muscle testing." (Id.). Dr. Komes believed that Plaintiff exerted "submaximal effort" in the testing of his grip strength and the range of motion in his hips. (Id.). Dr. Komes concluded: "Based on today's evaluation, there are no significant abnormalities that should prohibit sitting, standing, walking; lifting, carrying, handling objects; hearing, speaking, or traveling." (Tr. 257-58).

In August 2012, Plaintiff underwent x-rays of the lumbar spine and left knee. (Tr. 260). Dr. Jonathan Root analyzed the x-ray and found "larger osteophytes at L2-L3 and L3-L4" and "minor degenerative change" in his left knee. (Tr. 266-67).

On September 25, 2012, Plaintiff visited his primary care physician, who prescribed Motrin for Plaintiff's back pain and referred him to an orthopedist. (Tr. 274). On October 17, 2012, Plaintiff saw Harry Stevenson, an advanced practice registered nurse (APRN), at Missouri Orthopaedic Institute. (Tr. 276-79). Plaintiff rated his pain as eight out of ten and reported that he had "not had any medications, therapy, injections, or surgery for this" and "has not been seen by any specialty physicians." (Tr. 277). Mr. Stevenson diagnosed Plaintiff with spondylosis of lumbar spine, with right lower extremity radiculopathy and right trochanteric bursitis. (Tr. 278). Mr. Stevenson prescribed Plaintiff gabapentin and Flexeril. (Id.). Mr. Stevenson also ordered x-rays, which revealed "[m]oderate multilevel lumbar spondylosis worst at L2-L3 level with large anterior and lateral endplate spurs and moderate intervertebral disc space reduction." (Tr. 280).

Plaintiff underwent an MRI of the lumbar spine on November 5, 2012. (Tr. 282-83). The MRI revealed "L5-S1 moderate to severe right lateral recess, moderate right foraminal, and

mild to moderate left foraminal stenosis secondary to disc herniation and degenerative disease."

(Id.).  Mr. Stevenson reviewed the MRI with Plaintiff, increased his gabapentin dosage, and referred him to Dr. Fiala for foot and ankle pain.  (Tr. 285).  In his notes, Mr. Stevenson wrote:

> At this time, given the degenerative changes of his back, the long term pain that he has been having in his right lower extremity pain [sic] and the MRI consistent with his symptoms.  It is not likely that [Plaintiff] would be able to return to gainful employment as an over the road trucker, given the strains and stresses of being seated for multiple hours during the day, getting up and in and out of the cab.  The patient would not be able to do any twisting, pushing, pulling or stooping.

(Id.).  Mr. Stevenson also provided Plaintiff a note excusing him from jury duty "because of the patient['s] inability to sit for greater than 5-10 minutes without severe pain."  (Tr. 287).

Dr. Gavin Vaughn at Missouri Orthopaedic Institute examined Plaintiff's right hip on November 8, 2012.  (Tr. 288-90).  Dr. Vaughn diagnosed Plaintiff with right iliotibial band pain and low back pain, prescribed stretching and strengthening exercises, and recommended Plaintiff continue taking ibuprofen and Flexeril "on an as-needed basis only."  (Tr. 289).

Plaintiff returned to Mr. Stevenson for a follow-up visit on November 13, 2012.  (Tr. 291-92).  Plaintiff reported that the gabapentin "has helped well."  (Tr. 291).  Mr. Stevenson noted that Plaintiff "seemed satisfied with the symptom relief that he had gotten with the gabapentin" but expressed interest in an epidural steroid injection.  (Tr. 292).

Dr. Kyle Fiala examined Plaintiff's ankle on November 13, 2012.  (Tr. 293-96).  Plaintiff informed Dr. Fiala that the pain in his right ankle "has been present for approximately 3 years," "is sharp and shooting in nature," and "is relieved with rest."  (Tr. 295).  Plaintiff rated his pain as eight out of ten.  (Id.).  Based on x-rays and a physical examination, Dr. Fiala diagnosed Plaintiff with ples planus, right; degenerative arthrosis, right midfoot; and sinus tarsi syndrome.

(Id.).  Dr. Fiala recommended Plaintiff wear a mechanical support and administered an injection. (Tr. 296).

Plaintiff returned to his primary care physician on November 16, 2012 and reported that his condition was "unchanged."  (Tr. 275).  Plaintiff informed his physician that his pain level with medication was four or five and his pain level without medication was eight or nine.  (Id.).

Dr. Murari Bijpuria reviewed Plaintiff's medical records on November 21, 2012 at the request of the SSA.  (Tr. 268).  Dr. Bijpuria found no documentation that claimant had sought and received treatment for persistent pain "lasting 12 consecutive months," no "motor weakness atrophy or radicular neurological deficits," and no "imaging or clinical evidence…of severe arthritis or scoliosis."  (Tr. 268-69).  Dr. Bijpuria concluded that Plaintiff's "alleged limitation [was] not credible" and his musculoskeletal impairments were non-severe.  (Tr. 269).

At his follow-up appointment with Mr. Stevenson on January 7, 2013, Plaintiff reported that he was no longer benefiting from the gabapentin.  (Tr. 297-99).  Mr. Stevenson administered a right L5-S1 transforaminal injection and increased Plaintiff's gabapentin dosage.  (Tr. 298).

On January 24, 2013, Plaintiff presented to Dr. Ajay Agarwal for an epidural injection. (Tr. 302-03).  Dr. Agarwal administered an interlaminal epidural steroid/anesthetic injection at L5-S1.  (Tr. 302).  After the procedure, Plaintiff informed Dr. Agarwal that his pain level decreased from seven to zero.  (Tr. 303).

Plaintiff had a follow-up appointment with Mr. Steveson on February 8, 2013.  (Tr. 304-05).  Plaintiff reported that he benefited from the interlaminar injection, but he was not performing the prescribed home exercises because "they hurt too greatly."  (Tr. 305).  On March 8, 2013, Dr. Dale Vaslow administered another L5-S1 translaminar epidural steroid injection, which decreased Plaintiff's pain level from seven to zero  (Tr. 306).

Plaintiff returned to Mr. Stevenson for a follow-up appointment on March 22, 2013. (Tr. 308-09). At that time, Plaintiff informed Mr. Stevenson that he had experienced "a marked reduction in his lumbar spine and right lower extremity symptoms" and rated his pain as four out of ten. (Tr. 309).

On May 20, 2013, Plaintiff sought a second opinion about his back pain from Dr. Joel Jeffries at Missouri Orthopaedic Institute. (Tr. 310-12). Dr. Jeffries diagnosed Plaintiff with diffuse lumbar spondylosis, opined that surgical intervention was not warranted, and recommended discontinuing injections because of Plaintiff's "limited response." (Tr. 311-12).

Plaintiff returned to Dr. Vaslow on October 8, 2013 and received another L5-S1 translaminar epidural steroid/anesthetic injection. (Tr. 313- 14). Plaintiff reported that the injection reduced his pain from eight to zero. (Tr. 314). Plaintiff followed up with Mr. Stevenson, who encouraged Plaintiff to resume his home exercises and quit smoking. (Tr. 315-16). Mr. Stevenson further noted that Plaintiff "may call back in another couple of weeks, should he want another epidural steroid injection[.]" (Tr. 316).

On November 20, 2013, Dr. Patrick Finder performed a psychological consultation for Plaintiff at the request of the SSA. (Tr. 317-23). Dr. Finder noted that Plaintiff appeared "somewhat disheveled in dress and appearance[.]" (Tr. 317). In regard to his daily routine, Plaintiff informed Dr. Finder that he generally arose around 6:30 a.m., drove his wife to work, watched television, and cared for the chickens. (Tr. 320). Plaintiff stated that he "tries to help his wife with the housework, but cannot do a lot of it" and "in the warm months he will mow the yard, but this is an all[-]day process for him." (Id.). Plaintiff informed Dr. Finder that he felt "'down in the dumps' all the time," had difficulty sleeping and concentrating, lacked energy and motivation, and experienced some "vague suicidal ideations." (Tr. 321). Dr. Finder stated that

Plaintiff showed symptoms of posttraumatic stress related to childhood abuse, anxiety, and social phobia. (Id.). Dr. Finder concluded that "it would be extremely difficult for [Plaintiff] to obtain or maintain employment" but, "with appropriate medical attention, he might be able to return to the work force at some time." (Tr. 323).

### III.    Standards for Determining Disability Under the Act

Eligibility for disability benefits under the Act requires a claimant to demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. See 20 C.F.R. §§ 404.1520, 416.920. Those steps require a claimant to show that he or she: (1) is not engaged in substantial gainful activity; (2) has a severe impairment or combination of impairments which significantly limits his or her physical or mental ability to do basic work activities or (3) has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) is unable to return to his or her past relevant work; and (5) the impairments prevent him or her from doing any other work. Id.

### IV.    The ALJ's Determination

The ALJ applied the five-step evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920 and found that Plaintiff: had not engaged in substantial gainful activity since April 1, 2011; had the severe impairments of diffuse lumbar spondylosis and lumbar disc herniation; and did not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 11-22). The ALJ determined that Plaintiff's medically determinable impairments of major depression and social phobia did "not cause more than a minimal limitation in [Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere." (Tr. 14). Likewise, the ALJ found that Plaintiff's impairments of the left knee and right foot were non-severe. (Id.). The ALJ explained that Plaintiff's back impairment did not meet the requirements of Listing 1.04 because the record did not demonstrate nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication. (Tr. 16).

The ALJ determined that Plaintiff had the RFC to perform light work with the following limitations:

> [Plaintiff] must have a "sit/stand" option allowing a change in position every 30 to 60 minutes for a few minutes at a time while remaining at the work station. He can perform work that does not require climbing on ropes or scaffolds, and no more than occasional climbing on ramps or stairs, kneeling, crouching, or crawling. He should avoid concentrated exposure to extreme cold, vibration, and work hazards such as unprotected heights and being around dangerous moving machinery. [Plaintiff] can never twist or stoop. He can occasionally push or pull with the lower extremities.

The ALJ noted that Plaintiff alleged: difficulty sleeping; sharp and constant lower back pain radiating into his right leg and foot; pain in his wrists, arms, and shoulders; depression related to his inability to participate in activities he once enjoyed; and difficulty sitting longer than fifteen to twenty minutes, standing longer than twenty minutes, bending, dressing himself, and riding long distances. (Tr. 17). Although the ALJ found that Plaintiff's "medically determinable

impairments could reasonably be expected to cause some symptoms," she believed Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible[.]" (Id.).

The ALJ proceeded to review Plaintiff's medical records and determined that the following facts were inconsistent with Plaintiff's claim of disabling lower back pain: Plaintiff did not seek treatment for his allegedly disabling conditions from the April 1, 2011 onset date through his application for benefits in June 2012; Plaintiff's earliest medical record, which was from the consultative physician's examination of July 2012, stated that Plaintiff gave "suboptimal effort in testing" and found no significant objective findings; Plaintiff "was treated with mostly conservative measures"; and Plaintiff's treating doctors neither prescribed narcotic pain medications nor recommended surgical intervention. (Tr. 20). The ALJ further found that Plaintiff's activities of daily living, including occasional cooking, house work, and yard work, were "in excess of what one would expect from a totally vocationally disabled individual." (Id.).

The ALJ determined that claimant was unable to perform past relevant work, but found that Plaintiff was able to perform the requirements of representative light, unskilled occupations identified by the vocational expert at the hearing. (Tr. 22). The ALJ concluded: "[C]onsidering [Plaintiff's] age, education, and work experience, and residual functional capacity, [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and is, therefore, "not disabled." (Id.).

## V.    Standard for Judicial Review

The court must affirm the ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruze v. Chater, 85 F.3d

1320, 1323 (8th Cir. 1996) (quotation omitted). In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). However, the court "do[es] not reweigh the evidence presented to the ALJ and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reason and substantial evidence." Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)).

"If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Partee v. Astrue, 638 F.3d 860, 863 (8th Cir. 2011) (quoting Goff v. Barnhart, 421 F.3d 785, 789 (8th Cir. 2005)). The Eighth Circuit has repeatedly held that a court should "defer heavily to the findings and conclusions" of the Social Security Administration. Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010); Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001).

## VI.    Discussion

Plaintiff claims the ALJ erred in failing to:  (1) find that Plaintiff's mental impairments were severe; (2) provide adequate reasons for discounting medical opinions relating to Plaintiff's physical impairments; and (3) consider Plaintiff an individual "approaching advanced age" when assessing his ability to perform any other work.  In response, the Commissioner asserts that substantial evidence supports the ALJ's evaluation of the medical opinions and determination that Plaintiff was able to perform work.

### 1.  Severity of mental impairments

Plaintiff contends the ALJ erred in his assessment at step two of the sequential analysis by assigning little weight to the opinion of the consulting psychologist. Dr. Finder, and determining that Plaintiff did not suffer a severe mental health impairment. The Commissioner counters that substantial evidence supported the ALJ's determination at step two of the sequential evaluation process that Plaintiff's medically determinative mental impairments were non-severe.

At step two of the five-step evaluation process, the ALJ determines whether the claimant is severely impaired. Hepp v. Astrue, 511 F.3d 798, 803 n.4 (8th Cir. 2008). To demonstrate that an impairment is severe, a claimant must show that he has: (1) a medically determinable impairment or combination of impairments, which (2) significantly limits his physical or mental ability to perform basic work activities, without regard to age, education, or work experience. See 20 C.F.R. §§ 404.1520(a)(4)(ii); 404.1521(a), 416.920(a)(4)(ii), 416.921(a). An impairment or combination of impairments is not severe if it does "not significantly limit the claimant's physical or mental ability to do basic work activities." Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007). "While not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem." Whitman v. Colvin, 762 F.3d 701, 706 (8th Cir. 2014) (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)).

Aside from Plaintiff's testimony that he suffered "some" depression, the only evidence relating to Plaintiff's mental health appeared in the report from Dr. Finder's consultative psychological examination. (Tr. 317-23). Dr. Finder noted that Plaintiff "initially denied any history of mental health treatment but then stated that he was on anti-anxiety medication for a time in the late 1990s." (Tr. 320). Plaintiff informed Dr. Finder that he: felt "down in the dumps" all the time; had difficulty sleeping, focusing, and concentrating; and lacked energy and

motivation. (Tr. 321, 322). Plaintiff also reported symptoms of anxiety, posttraumatic stress related to childhood abuse, and social phobia. (Id.). Based on his one-time examination, Dr. Finder believed "it would be extremely difficult for [Plaintiff] to obtain or maintain employment." (Tr. 323). However, Dr. Finder noted: "[W]ith appropriate medical attention[,] [Plaintiff] might be able to return to the workforce at some time." (Id.).

At step two of the sequential evaluation process, the ALJ found that Plaintiff's medically determinable mental impairments, specifically major depression and social phobia, were not severe. (Tr. 14-16). First, the ALJ noted that Plaintiff's attorney "did not contend that these impairments were severe at the disability hearing." (Tr. 14). The ALJ then considered the evidence of Plaintiff's activities of daily living, social functioning, and concentration and persistence, and she found that Plaintiff's mental impairments caused "no more than a mild limitation" in each area. (Tr. 15).

Finally, the ALJ considered Dr. Finder's consultative psychological examination. (Id.). The ALJ assigned Dr. Finder's report "little weight" because it was "not generally consistent with the record as a whole, which does not demonstrate a severe mental impairment." (Id.). The ALJ noted that Dr. Finder "did not assess [Plaintiff's] limitations on a function by function basis," and she deemed it significant that "there is no record on file of the claimant seeking or receiving mental health treatment from either a psychologist or psychiatrist." (Tr. 16).

Upon review, the Court finds the ALJ properly evaluated Plaintiff's mental impairments, and there is no basis for reversal on this issue. The evidence revealed that: Plaintiff did not seek mental health treatment during the alleged period of disability; Plaintiff did not allege an emotional impairment in his application for disability; and Plaintiff's counsel informed the ALJ that Plaintiff's emotional impairment would not "rise to the level of severe impairment." See

Kirby, 500 F.3d at 707-09 (ALJ did not err in determining that claimant's depression was not severe where claimant did not allege depression on his application and received no long-term professional mental health treatment). Furthermore, there was no evidence establishing a functional loss resulting from Plaintiff's mental impairments. Finally, the ALJ properly discounted Dr. Finder's opinion, which was based upon a single examination and inconsistent with the evidence in the record. See Loving v. Dept. of Health & Human Servs., 16 F.3d 967 (8th Cir. 1994) ("[A] one-time evaluation by a non[-]treating psychologist is of little significance by itself.").

Finally, Dr. Finder's conclusory statement that Plaintiff cannot work due to his mental impairments is a judgment that is reserved for the Commissioner. See Ellis v. Barnhart, 392 F.3d 988, 995 (8th Cir. 2005) ("A medical source opinion that an applicant is 'disabled' or 'unable to work,' . . . involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight."). For the foregoing reasons, the Court concludes that substantial evidence supports the ALJ's determination that Plaintiff did not have a severe mental impairment.

   *2. Medical opinion evidence*

Plaintiff argues that the ALJ erred in assigning little weight to the opinions of Plaintiff's treating nurse practitioner, Mr. Stevenson, and consultative physician, Dr. Komes. In making a disability determination, the ALJ shall consider the medical opinions in the case record together with the rest of the relevant evidence in the record. 20 C.F.R. §§404.1527, 416.927. "The amount of weight given to a medical opinion is to be governed by a number of factors, including the examining relationship, the treatment relationship, consistency, specialization, and other factors." Shontos v. Barnhart, 328 F.3d 418, 426 (8th Cir. 2003) (citing 20 C.F.R. §

404.1527(d)). "The regulations provide that the longer and more frequent the contact between the treating source, the greater the weight will be given the opinion[.]" Id. (citing 20 C.F.R. § 404.1527(d)(2)(i). A treating source's opinion is to be given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record." Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)).

*a. Harry Stevenson, advanced practice registered nurse*

Plaintiff first contends that the ALJ gave insufficient weight to Mr. Stevenson's medical opinion. More specifically, Plaintiff asserts that the ALJ "did not explain her basis for adopting a finding that differs from the treating source in regard to pushing and pulling." The Commissioner counters that Mr. Stevenson's opinion was not entitled to deference, evidence in the record supported the ALJ's finding that Plaintiff was not precluded from all pushing and pulling with his lower extremities, and the alleged error was harmless.

"Social Security separates information sources into two main groups: *acceptable medical sources* and *other sources*. It then divides *other sources* into two main groups: *medical sources* and non-medical sources." Sloan v. Astrue, 499 F.3d 883, 888 (8th Cir. 2007) (emphasis in original). Nurse practitioners "are specifically listed as 'other' medical sources who may present evidence of the severity of the claimant's impairment and the effect of the impairment on the claimant's ability to work." Lacroix v. Barnhart, 465 F.3d 881, 886 (8th Cir. 2006) (citing 20 C.F.R.§§ 404.1513(d)(1), 416.913(d)(1)). "Evidence provided by 'other sources' must be considered by the ALJ; however, the ALJ is permitted to discount such evidence if it is inconsistent with the evidence in the record." Lawson v. Colvin, 807 F.3d 962, 967 (8th Cir. 2015) (citing LaCroix, 465 F.3d at 886-87).

As a nurse practitioner, Mr. Stevenson was not an "acceptable medical source" who may be considered a "treating source."[1]  See Crawford v. Colvin, 809 F.3d 404, 408 (8th Cir. 2015); 20 C.F.R. §§ 404.1502, 404.1513(a), 416.902, 416.913(a); SSR 06–03p, 71 Fed. Reg. 45,593 (Aug. 9, 2006).  Thus, in considering the evidence, including opinion evidence, from Mr. Stevenson, the ALJ was not bound by the treating source regulations but had "more discretion" and was "permitted to consider any inconsistencies found within the record." Tindell v. Barnhart, 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir. 2005)).

Based on two appointments with Plaintiff, Mr. Stevenson completed a report stating that, due to the degenerative changes in Plaintiff's back, Plaintiff could not twist, push, pull, or stoop. (Tr. 20).  The ALJ found "this statement is generally consistent with the objective evidence as a whole," but noted that "the record does not fully support that [Plaintiff] would be *completely precluded* from all of the listed activities." (Id.) (emphasis added).  Despite the limitations identified by Mr. Stevenson, the ALJ included in Plaintiff's RFC the ability to "occasionally push or pull with the lower extremities." (Tr. 16).

The ALJ properly considered Mr. Stevenson's opinion and assigned it "partial weight" because evidence in the record contradicted Mr. Stevenson's opinion that Plaintiff could not push or pull.  See Travis v. Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007) (ALJ may give less weight to a medical opinion when it is inconsistent with the evidence in the record).  Specifically,

_____

[1] Although Plaintiff refers to Mr. Stevenson as a "treating source," he does not allege that Plaintiff was associated with a physician, psychologist, or other acceptable medical source that might give him treating source status.  Cf. Shontos, 328 F.3d at 426 (8th Cir. 2003) (assigning treating source status to a group of medical professionals, including therapists and nurse practitioners, who worked with claimant's psychologist, where the treatment center used a team approach).

Plaintiff's physical examinations revealed normal strength in his lower extremities and his daily activities included driving his wife to work.

Furthermore, as the Commissioner states, Plaintiff failed to demonstrate that he was harmed by the ALJ's alleged error in omitting a greater pushing and pulling limitation. To meet his burden of demonstrating reversible error, Plaintiff "must provide some indication that the ALJ would have decided differently if the error had not occurred." Byes v. Astrue, 687 F.3d 913, 917 (8th Cir. 2012). At the hearing, the vocational expert testified that the light-exertional-level jobs she identified for Plaintiff did not require "use of the lower extremities pushing, pulling. . . ." (Tr. 51). Accordingly, Plaintiff fails to demonstrate that the inclusion of a pushing and pulling limitation would have resulted in a disability finding. The Court finds that the ALJ did not err in assigning Mr. Stevenson's opinion partial weight.

### b. Dr. Kevin Komes, consulting physician

Next, Plaintiff contends that the ALJ erred in assigning "little weight" to the opinion of the consulting physician, Dr. Komes, and failing to reconcile inconsistencies within that opinion. The Commissioner counters that: (1) the ALJ provided adequate reason for ascribing Dr. Komes' opinion little weight; and (2) the inconsistency in Dr. Komes's report was clearly an error, which required no clarification.

A Social Security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record. Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005). While the regulations provide that the ALJ should recontact a treating physician when the information the physician provides is inadequate for the ALJ to determine whether the claimant is actually disabled, the regulations do not require an ALJ to recontact a treating physician whose opinion was inherently contradictory or unreliable. Hacker v. Barnhart, 459 F.3d 934, 938 (8th Cir. 2006). This is

especially true when the ALJ is able to determine from the record whether the claimant is disabled.  <u>Sultan v. Barnhart</u>, 368 F.3d 857, 863 (8th Cir. 2004).

In this case, Dr. Komes examined Plaintiff in a single visit in July 2012.  On the cover sheet of his report, Dr. Komes checked "no" in response to the question:  "Can this patient sustain a 40-hour workweek on a continuous basis?"  (Tr. 253).  However, in the detailed report he provided the agency, he wrote that Plaintiff:  "has at least 4/5 strength in shoulder flexors, elbow flexors and extensors, wrist flexors and extensors, and interossei;" "4/5 strength in hip flexors, knee flexors and extensors, and ankle dorsi and plantar flexors"; and "no atrophy or asymmetry of the upper and lower extremities."  (Tr. 257, 258).  Dr. Komes observed that Plaintiff was able to "make a fist, and extend his hand without difficulty," "stand on his toes and heels," and squat.  (Tr. 257).  Dr. Komes believed that Plaintiff's displayed "suboptimal effort" in his grip and range-of-motion testing.  (<u>Id.</u>).  Based on his examination, Dr. Komes concluded: "[T]here are no significant abnormalities that should prohibit sitting, standing, walking; lifting; carrying, handling objects; hearing, speaking or traveling."  (Tr. 258).

Given Dr. Komes' detailed findings and conclusion that Plaintiff suffered no significant limitations, there appears to be no basis for his notation on the cover sheet indicating that Plaintiff was unable to sustain a 40-hour work week.  Plaintiff cites no support for the proposition that the ALJ has a duty to reconcile discrepancies within a single medical source's opinion evidence, particularly when the medical source is a non-treating, consultative physician. Nor does Plaintiff assert that the record contains insufficient evidence to determine whether he was able to work.  The ALJ is not required to obtain additional evidence where, as here, the record is already well-developed.  <u>See</u> <u>Tellez v. Barnhart</u>, 403 F.3d 953, 956-57 (8th Cir. 2005).

Furthermore, Dr. Komes's statement that Plaintiff cannot sustain a full-time job is not a medical opinion. Rather, it is an opinion "on the application of the statute, a task assigned solely to the discretion of the [Commissioner]." Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) (alteration in original) (quoting Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002)). Thus, even if Dr. Komes indicated that Plaintiff was incapable of maintaining employment, the ALJ properly disregarded that portion of Dr. Komes' report. The Court finds no error in the ALJ's decision to assign little weight to Dr. Komes's opinion and not recontact him under such circumstances.

### 3. Plaintiff's age category

Finally, Plaintiff claims the ALJ erred at step five of the sequential evaluation, where she found that Plaintiff was able to perform other work, because she improperly applied the medical-vocational guidelines' age categories. In response, the Commissioner argues that the ALJ did not apply the wrong age category and, even if she had, the age category did not affect the ultimate determination.

"The medical-vocational guidelines, or grids, 'are a set of charts listing certain vocational profiles that warrant a finding of disability or non-disability.'" Phillips v. Astrue, 671 F.3d 699, 702 (8th Cir. 2012) (quoting McCoy v. Astrue, 648 F.3d 605, 613 (8th Cir. 2011)). The guidelines specify three age categories: "younger person," under age fifty; "person closely approaching advanced age," ages fifty to fifty-four; and "person of advanced age," age fifty-five or older. Id. (citing 20 C.F.R. §§ 404.1563(c)-(e), 20 C.F.R. 416.963 (c)-(e)).

Here, Plaintiff was age forty-seven at the alleged date of onset and age fifty at the time of the hearing and the ALJ's decision. When presenting her hypothetical questions to the vocational expert at the hearing, the ALJ specified that the hypothetical individual was "47 at the

amended onset date, 50 years old now." (Tr. 48). The vocational expert applied the factors identified by the ALJ and stated that a hypothetical individual with Plaintiff's age, education, and physical limitations could work as a folding machine operator, garment sorter, or mail clerk. (Tr. 49-50).

In her analysis at step five, the ALJ relied upon the vocational expert's testimony to determine whether Plaintiff was able to perform any work existing in significant numbers in the national economy. (Tr. 22). The ALJ did not rely upon the medical-vocational grids. Therefore, Plaintiff's allegation that use of the higher age category would have changed the ALJ's decision lacks merit. See Lockwood v. Commissioner, 616 F.3d 1068, 1072 (9th Cir. 2010). Furthermore, application of the medical-vocational guidelines and the higher age category would not have directed a finding of disability. As the Commissioner argues in her brief, the medical-vocational guidelines for light work only direct a finding of "disabled" for an individual closely approaching advanced age if the individual is illiterate or unable to communicate in English. See 20 C.F.R. Pt. 404, Subpt. P, App.2., 202.09-202.15. Plaintiff is neither illiterate nor unable to communicate in English. Based on the foregoing, the Court finds the ALJ did not err in her application of the vocational-medical guidelines at step five.

## *VII. Conclusion*

For the reasons discussed above, the undersigned finds that substantial evidence in the record as a whole supports the Commissioner's decision that Plaintiff is not disabled. Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying Social Security benefits to Plaintiff is **AFFIRMED.**

A separate judgment in accordance with this Memorandum and Order is entered this date.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 12th day of September, 2016